O’Neall, J.
dissenting. — In this case, I trust that, as I stand now alone in opinion, I may be permitted to say, that the case has been argued in the Court of Errors without any agency on my part. No one regrets more than I do, the great consumption of time in this court. Still it is, perhaps, a necessary evil in the administration of justice.
The Lord’s day, it seems to be well settled, is that portion of time between Saturday evening midnight, and midnight Sunday evening. The question is can a verdict in a case at law be rendered in that time 1 I am clear it cannot be.
The Lord’s day is not, like the Jewish Sabbath, resting on a positive command for its observance. But it is the day of the Resurrection ; it is the day set apart from then, as that on which the followers of Jesus Christ should assemble themselves together. By the common consent of the Christian world, and I may therefore venture to say by inspiration, it has been set apart as a day of rest, instead of the Jewish Sabbath. No doubt works of necessity and benevolence may be done on it.
*528 11 Dies non juridici sunt dies dominici,” (the non-judicial days are the Lord’s days) “ throughout the whole year.” The only exception was, that necessary ministerial acts might be done. What are the ministerial acts here intended ? They, as I think, were confined to service of process; and even that, by Stat 29 Car. 2, c. 7, sec. 6, was limited to treas- : on, felony, or breach of the peace. In Johnson v. Satterwhite, it was ruled that it is against law to serve writs’ • (subpoena writs) on Sunday.
I have no idea that the receipt and recording of a verdict is a ministerial act. It requires the court to be in session. Lord Mansfield, in Swann v. Broome, tells us “ it is impossible for the court to sit on a Sunday.” “ Some of these return days,” says Tidd. 106, speaking of the return days of the English Terms, “ happen on a Sunday, and evidently, when writs were formal, courts did actually sit on that day; but that practice having been long disused, it is now holden, that an appearance cannot be entered, nor any judicial act done, or supposed to be done, in the court until Monday.” Is not an appearance as much a ministerial act as receiving a verdict? Perhaps more so. For it, the constructive presence of the court is sufficient. For the reception of a verdict, the court must be actually present.
When the jury present themselves in their box to deliver their verdict, the plaintiff has a right, before it is pronounced, to submit to a non-suit. This, technically, is the judgment of the court, and supposes the court to judicially pass on the matter. A non-suit ordered on Sunday ! How can that be excused ? Again, when the jury present themselves to render their verdict, they may, in the discretion of the court, be polled. This one would think was a judicial act. So, too, a verdict is not always right, as written by the jury. The Judge has the right, and it is his duty to order it corrected. Is not this a judicial act ?
But the reception of a verdict on Sunday leads to this ugly state of things. The court must be adjourned on Saturday evening, if the jury are to be kept together, and their verdict to be received as soon as they may agree; when they do agree, if it be mid-day of Sunday, the Judge, the clerk, sheriff and attorneys are to be dragged from the Church to the Court House ; and as the people retire from the house of prayer, they are to hear the sheriff proclaiming the adjournment, until Monday morning 10 o’clock. Such a spectacle has never been heretofore witnessed in South Carolina, and I hope never will. Since Shaw v. M’Combs, it has been considered settled and established as law in this State, that a verdict delivered in on Sunda3r morning, after the expiration of the 12th hour, is void. It is true, however, in that case, that the term of the court had expired, and hence the deci *529 sion, as Far as slated, is not necessarily binding on ns; but still the Judges did not seem to regard that in the decision ; and after an acquiescence of forty years, it is better to abide by even a dictum on a point of practice, and which has operated well enough, rather than to unsettle it by a new rule of uncertain operation.
But it is said, it is a necessary work, inasmuch as the jury would be kept together all Sunday, when a few moments might relieve them. If this were true, I might, and would, go a great way to discharge the jury. But there is nothing whatever in it. The Act of the legislature of 1818, when read and understood, in the plain sense of the words usedj removes the whole difficulty. The preamble sets out the mischief, which was, that as jurors in Charleston were env-pannelled for one week, when the term was of several weeks duration, and in consequence of it, many causes of litigated and important nature, commenced and not determined' within the term, proye to be mistrials ; to remedy it, it was therefore enacted in the first section, “ that any jury in Charleston district which shall be hereafter impannelled, and charged with the trial of any issue, civil or criminal, whose term of one week shall terminate or expire before the final decision of such issue, such jury shall not be discharged, as heretofore, but it shall and may be lawful for the presiding Judge to adjourn the said jury to the ensuing- week, in like manner as juries are adjourned from day to day ; and such-juries shall duly attend at the time to which they are so adjourned, and resume the consideration of such issue, until-such jury shall havefinally made up their verdict; and disposed'of such issue, or shall otherwise be lawfully discharged’from the consideration thereof, any law, custom or usage, to the contrary thereof in anywise nouvitnstanding.”’ In the second section; it is provided, “ that any juror composing such jury, as shall be so adjourned, as aforesaid, who shall refuse or neglect to attend at the time and place to which he shall be so adjourned,, in conformity with this Act, shall be subject to the same pains, forfeitures and penalties, as by the laws of this State-are usiually imposed upon jurors who shall' make default.” The third section extends these provisions- to all parts of -the-State where courts sit for more than one-week.
The reading of this Act is so plain, that I confess, -were ife not that my brothers have come to a different conclusion, £ would say, there could be no doubt, that when- the jury .could not agree before 12 o’clock of Saturday evening, they must be adjourned over until Monday morning, 10 A. M. and then resume the consideration of the case. The words certainly mean that, and nothing else. It has, however, been argued, that this construction would not do to be adopted after the jury .have been charged with a case; then, it is said, they *530 must be kept together until they agree. To this I answer, the legislature contemplated that very case. For they speak a jury “charged with the trial of any issue, civil or criminal, whose term of one week shall terminate or expire before the final decision of such issuein such a case they have directed that they shall be “adjourned,” “ shall attend,” “shall resume the consideration of such issue-;” and after being adjourned, if they shall fail to attend at the time and place to which they shall be adjourned, they shall be liable to penalties, &c. \t is plain, from such words, that the legislature knew what they were speaking about, and that they intended, in every case where the jury could not agree, within the week, that is before midnight of Saturday, they should be adjourned beyond Sunday. No doubt they weighed the evil of allowing a jury, after they were charged, to separate, with that.of keeping 12 citizens, many of whom are husbands, shut up, separated from their wives and children, and kept from their religious duties on Sunday ; and no doubt it was regarded as the less evil, to allow them to return to their homes, attend to their household duties, mingle in the worship of our common Father, on the Sunday, and then return on Monday, refreshed and calmed from the angry discussions of Saturday, in the jury room, to the consideration of the •cause. In this view of the matter, I .fully concur. For one, I can- say, I have much less fear of a jury being tampered with, when allowed to separate, under proper instructions from the court, than when they are caged and shut up like wild beasts, to force an agreement. Tell jurymen in the presence of the crowd in the court room, that they are to suffer no one to speak to them on the case, while they are allowed to separate; and if any one does, to report him to the court, and I think no one ever will make an attempt to violate such instructions. An experience of more than thirty years does not enable me to point out a single instance of abuse under such circumstances. The fault of our judicial administration, is in treating juror.s with too little consideration. Let them understand that they are regarded as gentlemen, and treat them accordingly, andl scarcely ever have .a fault to find with them. Be these considerations, however, as they may, and even if 1 doubted the wisdom of the enactment, I would not dare to set up my notions against itihe Act. Ita lex scripta is enough for me. But it is said, it was discretionary with the Judge, to adjourn the jury, or keep them together. The words are, “ it shall and may be law¡M.” When they are used in an Act, they are equivalent to a .command. In this case, however, they constitute the .only authority of. the-Judge to keep the jury. Before he was . bound to discharge .them at 12 o’clock Saturday evening- ; now, he may adjourn them over to the next week.
*531 With these views of the Act of 1818, it is to my mind, plain, that there was no necessity to receive the verdict on Sunday, 4 and keeping the jury one moment after 12 o’clock Saturday night, was a violation of the Act.
It has been suggested, that if the jury deliberated after 12, and the verdict was the result of that, that then such deliberation and rendition would make it judicial and void. It is true, the verdict was delivered quarter past 12, and it may be there was not much deliberation in the 15 minutes, yet I apprehend we have no right to make such inquiry. The verdict, when rendered, is, in law, regarded as the conclusion of the jury, at that moment; and hence, according to the reasoning suggested by those in favor of this verdict, it could not be supported.
I regret, that while other States have passed laws to secure the observance of Sunday, we should in any way trench upon it. If I know myself, I have no Phrarasaical notions, which would reverse the object of the Sabbath, in making inan for it, instead of holding it to be for man. Still its due observance as a day of worship and rest, is of so much importance to morals, and to the health and happiness of man, that I would do nothing calculated in the slightest degree, to diminish a due observance of it. I fear this decision will have that affect.